UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA JAMES,

     Plaintiff,                           No. 13-CV-13029
                                       HON. MARK A. GOLDSMITH
vs.

FEDERAL HOME LOAN MORTGAGE
CORP., et al.

     Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Dkt. 15) and DISMISSING PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 14) WITH PREJUDICE

### I.  INTRODUCTION

This foreclosure case is before the Court on Defendant Federal Home Loan Mortgage Corporation's ("Freddie Mac") and Defendant Chase Bank's motion to dismiss Plaintiff Tina James's First Amended Complaint (Dkt. 15).  The First Amended Complaint centers on two purported actions by Defendant Chase:  (i) promising a short sale, but then denying the request; and (ii) informing Plaintiff that the redemption period was shorter than statutorily required.  First Am. Compl. (Dkt. 14).  Defendants argue that Plaintiff has failed to state a claim, and therefore the Court should dismiss her complaint.  Defs. Mot. to Dismiss (Dkt. 15).  Plaintiff filed a response (Dkt. 17), Defendants filed a reply (Dkt. 18), and the Court heard oral argument on April 24, 2014.

For the reasons described below, the Court agrees that Plaintiff has failed to state a claim on which relief may be granted.  Therefore, the Court grants Defendants' motion to dismiss, and dismisses Plaintiff's First Amended Complaint with prejudice.

1

## II. BACKGROUND

Plaintiff obtained a loan in 2007, secured by a mortgage on her home. Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as nominee of the lender, its successors and assigns. <u>See</u> Mortgage (Dkt. 15-2). MERS subsequently assigned the mortgage to Defendant Chase. <u>See</u> Assignment (Dkt. 15-3).

Plaintiff ultimately had difficulty making her mortgage payments. After being denied a loan modification, Plaintiff retained a real estate agent in August 2012 in an attempt to complete a short sale of the property. First Am. Compl. ¶¶ 8-9.

Plaintiff purportedly received numerous offers on the property, and, on November 26, 2012, Plaintiff was informed that Chase had approved the short sale and would send an approval letter shortly thereafter. <u>Id.</u> ¶ 10. Nevertheless, Plaintiff alleges that, without her knowledge, Chase auctioned the property at a sheriff's sale on November 27, 2012, at which Chase purchased the property. <u>Id.</u> ¶ 13-14.

Over the next few weeks, Plaintiff's real estate agent asked Chase representatives why Plaintiff had not yet received an approval letter for the short sale. <u>Id.</u> ¶¶ 11-12. Plaintiff alleges that Chase's representatives repeatedly informed her real estate agent that the letter was forthcoming and that the paperwork had been submitted to Freddie Mac for approval. <u>Id.</u>

Plaintiff further claims that a Chase representative told her on November 30, 2012 that her redemption period expired on January 31, 2013, and that the short sale had to close before January 13, 2013. <u>Id.</u> ¶ 15. However, in her affidavit attached to the First Amended Complaint, Plaintiff also alleges that she "had no knowledge that [she] had a redemption as [she] did not even know there was a sheriff's sale." Pl. Aff. ¶ 10 (Dkt. 14-2). In any event, Plaintiff moved out of the property in December 2012. First Am. Compl. ¶ 16.

2

Chase subsequently quitclaimed the property to Freddie Mac on January 8, 2013.  Id. ¶ 17.  Nevertheless, Plaintiff received letters from Chase through April 2013 indicating that it still was reviewing her short-sale request.  Id. ¶ 19.  Plaintiff's real estate agent ultimately contacted Freddie Mac directly in April 2013 to determine the problem with finalizing the short sale; Plaintiff claims her agent discovered that the paperwork had never been submitted to Freddie Mac for approval.  Id. ¶ 21.

On May 17, 2013, Chase sent a letter to Plaintiff's real estate agent regarding the short-sale request.  5/17/13 Correspondence at 8 of 11 (cm/ecf page) (Dkt. 1-2).  In the letter, Chase acknowledged that its representative spoke with Plaintiff on November 23, 2012, during which the agent was advised that there was a short-sale offer on the house for $315,000, with $290,171.95 being paid to Chase.  Id.  Chase requested that changes be made to the HUD-1 form.  Id.  Chase also wrote in the letter that a representative spoke with Plaintiff on November 30, 2012, at which time the representative stated that "the redemption file approval was good through January 31, 2013."  Id.

In addition, Chase acknowledged in the May 2013 letter that its representatives had spoken with Plaintiff numerous times throughout December 2012 regarding the sending of an approval letter.  Id.  However, Chase claimed that it determined on December 26, 2012 that it was "unable to issue the approval letter because [it] had not yet received investor or insurer approval for the offer."  Id. at 9 of 11 (cm/ecf page).  Chase claimed that it could not accept an offer less than $355,000.  Id.  Chase also mentioned that it had tried obtaining an exception in January and February so as to grant the request, but had been unsuccessful.  Id.  Chase acknowledged its previous mistakes, but ultimately denied the short-sale request:

> We apologize that incorrect information regarding an approval was previously provided by one of our representatives.  We take these matters

3

> seriously and apologize that we did not provide the level of service you expect from us. We do not tolerate unprofessional behavior from any of our employees and are taking appropriate action.

Id.

The letter concluded by informing Plaintiff's real estate agent that, "[a]t the time of the foreclosure sale on November 27, 2012, the loan was due for the July 2011 monthly mortgage payment and all subsequent payments, as well as any applicable fees. The state of Michigan provides for a 6 month redemption period, which expires May 27, 2013." Id.

Plaintiff did not attempt to redeem the property before May 27, 2013, although she appears to have received a pre-approval for a $280,000 mortgage loan on August 15, 2013, after the redemption period expired. See Approval Certificate (Dkt. 14-5).

Plaintiff filed a pro se complaint against Defendants on or around June 25, 2013. Compl. (Dkt. 1-2). Defendants removed the action to this Court on July 16, 2013. Notice of Removal (Dkt. 1). Plaintiff subsequently obtained an attorney. After the parties unsuccessfully attempted to resolve the matter, Plaintiff filed the governing First Amended Complaint, which contains five causes of action: (i) violation of foreclosure redemption statute; (ii) fraudulent misrepresentation; (iii) innocent misrepresentation; (iv) breach of contract; and (v) quiet title. First Am. Compl. The first four claims are against Defendant Chase, while the last claim is against Defendant Freddie Mac.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." In evaluating a motion to dismiss pursuant to Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint

4

states a plausible claim for relief." <u>Albrecht v. Treon</u>, 617 F.3d 890, 893 (6th Cir. 2010) (internal brackets, quotation marks, and citation omitted). To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-679 (2009). A complaint will be dismissed unless, when all well-pled factual allegations are accepted as true, the complaint states a "plausible claim for relief." <u>Id.</u> at 679.

In ruling on a motion to dismiss, the Court may consider the entire complaint, documents incorporated by reference in the complaint and central to the claims, exhibits attached to the complaint, and matters on which a court may take judicial notice. <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007); <u>Amini v. Oberlin College</u>, 259 F.3d 493, 502-503 (6th Cir. 2001). Therefore, the Court may consider the affidavits and other documents attached to Plaintiff's First Amended Complaint without converting Defendants' motion to dismiss into one for summary judgment. "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." <u>Williams v. CitiMortgage, Inc.</u>, 498 F. App'x 532, 536 (6th Cir. 2012) (quotation marks and citation omitted).[1]

## IV. ANALYSIS

### A. Violation of Foreclosure Redemption Statute

Plaintiff first alleges that Chase violated Michigan's foreclosure redemption statute, Mich. Comp. Laws § 600.3240(7), when its representative purportedly informed her that the

---

[1] Plaintiff does not dispute Defendants' argument that it is proper for the Court to consider the affidavits attached to the First Amended Complaint when ruling on the motion to dismiss. Nor does Plaintiff dispute Defendants' assertion that, if the Court finds a conflict between the complaint and the affidavits, the affidavits should prevail. Rather, Plaintiff simply argues that no inconsistency exists. Pl. Resp. at 6-9. Therefore, because the affidavits were attached to and referenced in the First Amended Complaint, the Court will consider them.

redemption period would expire on January 31, 2013, approximately four months before the period actually expired. First. Am. Compl. ¶¶ 23-28.[2] Plaintiff alleges that she and her children "moved out of the property in December of 2012, fearing that she would be evicted in one month and lose her opportunity to take advantage of the short sale because of the incorrect information she had received from Defendant Chase." Id. ¶ 28.

### 1. Parties' Arguments

Chase raises a number of arguments in support of dismissal of Plaintiff's claim for violation of the foreclosure redemption statute. First, Chase argues that Plaintiff lacks standing to raise these claims because her redemption period has expired. Defs. Br. at 9-11. Second, Chase maintains that, even if Plaintiff has standing, she has not alleged fraud or irregularity related to the foreclosure process sufficient to support this claim. Id. at 11-12.

Third, Chase claims that Plaintiff has not alleged a violation of Mich. Comp. Laws § 600.3240 because, (i) "Chase did not and cannot unilaterally reduce a statutorily required redemption deadline"; (ii) "Plaintiff _was_ _given_ a six month redemption period"; (iii) a misstatement about the redemption period, even if made, is not a violation of the statute; and (iv) Chase did inform Plaintiff of the correct end date both in the foreclosure notices, which correctly stated the applicable six-month redemption period, and in its May 2013 letter, which was sent a little over one week before the end of the period. Id. at 13-17 (emphasis in original).

Fourth, Chase argues that dismissal is required because Plaintiff's First Amended Complaint is inconsistent with her attached affidavit. In particular, Chase highlights Plaintiff's

---

[2] Plaintiff claims the January 31, 2013 date was "approximately five months" before the actual end of the redemption period. First Am. Compl. ¶ 27. However, the parties do not dispute that the property was sold at a sheriff's sale on November 27, 2012, and that the appropriate redemption period was six months, i.e., ending May 27, 2013. Therefore, Plaintiff was allegedly informed that her redemption period expired _four_ months before the actual end of the period, not five months.

6

statements in her affidavit that she "had no knowledge that [she] had a redemption as [she] did not even know there was a sheriff's sale." Id. at 6.

Finally, Chase claims that Plaintiff has not sufficiently alleged prejudice resulting from the alleged defect. Id. at 5-7, 11-14, 17. Chase argues that the First Amended Complaint and Plaintiff's affidavit are inconsistent regarding whether Plaintiff relied on the purported misrepresentation about the redemption period in moving out of her home. Chase highlights that Plaintiff alleges in the complaint that she moved out of the property because the redemption period was to expire in one month if the short sale was not completed, but that Plaintiff states in her affidavit that she moved "to make sure the short sale was completed in a timely manner, . . . [and] to make sure [she] was in compliance with the requests of Chase for the closing of the short sale." Id. at 5-8. Chase argues that this inconsistency undermines Plaintiff's claim that she was prejudiced by the alleged misrepresentation about the redemption period because she moved out of the home early for "fear[] that she would be evicted in one month." First Am. Compl. ¶ 28; see also Defs. Br. at 5, 8 ("Because the affidavit makes clear that Plaintiff did not rely upon any purportedly inaccurate statement by Chase regarding the redemption period when she vacated the Property, Plaintiff has failed to state a claim.").

Plaintiff responds that she has standing because she has alleged fraud and irregularity related to the underlying foreclosure proceedings. Pl. Resp. at 11-14. Plaintiff also claims that she has sufficiently alleged prejudice, i.e., that she "was placed in a position whereby the Defendants frustrated Plaintiff's statutory right to redemption, and caused a forced move-out of the property based upon [a] misrepresentation." Id. at 17.

With respect to Chase's arguments about the alleged inconsistencies between Plaintiff's affidavit and the governing complaint, Plaintiff argues that these two documents do not conflict.

7

Without any substantive explanation other than simply quoting the affidavit, Plaintiff claims that, when read in context, the documents are consistent. Id. at 7-8.[3]

### 2. Analysis

As described below, the Court finds that dismissal of Plaintiff's claim for violation of the foreclosure redemption statute is appropriate. In reaching this decision, the Court rejects some of Chase's arguments, but ultimately concludes that Plaintiff has not sufficiently made the allegations necessary to support such a cause of action.

With regard to the standing argument, Chase claims that because the redemption period has expired, the purchaser at the sheriff's sale (i.e., Chase) is vested with "all the right, title, and interest" in the property. Therefore, Chase claims that Plaintiff does not have "standing" to bring her claims. Defs. Br. at 10-11. To the extent Chase is raising an Article III argument, the Court has rejected this argument in the past as meritless, and does so again here. See Etts v. Deutsche Bank Nat'l Trust Co., No. 13-11588, 2014 WL 645358, at *4 (E.D. Mich. Feb. 19, 2014).

The Court also rejects Chase's argument to the extent it challenges Plaintiff's "standing" under Michigan law. See Price v. Fed. Home Loan Mortg. Corp., No. 12-12012, 2013 WL 980278, at *3 (E.D. Mich. Mar. 13, 2013); Etts, 2014 WL 645358, at *4-5. As explained in Etts, the question is not one of standing, but whether Plaintiff has alleged facts sufficient to meet the high bar required to obtain an equitable extension of the redemption period and set aside the foreclosure sale under Michigan's foreclosure statutes. Etts, 2014 WL 645358, at *4-5 ("[E]xpiration of the redemption period does not necessarily bar standing. Rather, as the Sixth

---

[3]  Plaintiff also raises an argument that she did not waive her statutory right to redemption. See Pl. Resp. at 20-21. This argument is irrelevant, however, because Defendants do not dispute that Plaintiff did not waive her right to redemption. Defs. Reply at 6. Rather, Defendants claim Plaintiff is not entitled to relief because she received her full statutory redemption period, and failed to redeem.

Circuit has explained, 'It is more accurate to say that the "fraud or irregularity claims" . . . lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale.'" (quoting El-Seblani v. IndyMac Mortg. Servs., 510 F. App'x 425, 429 (6th Cir. 2013)).

It is well established that "[t]he law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity, . . . [which] must relate to the foreclosure procedure itself." Id. at *5 (quotation marks and citations omitted). Here, Plaintiff alleges that Chase misrepresented when the redemption period expired following the sheriff's sale. First Am. Compl. ¶¶ 23-28. The redemption period certainly relates to the foreclosure procedure; indeed, it is set forth in the portion of the Michigan Compiled Laws dealing with "Foreclosure of Mortgages by Advertisement." See Mich. Compl. Laws § 600.3240; see also Mitchell v. PHH Mortg. Corp., No. 306633, 2013 WL 331567, at *3 (Mich. Ct. App. Jan. 29, 2013) ("Once a mortgagee elects to foreclose a mortgage by advertisement, MCL 600.3201 et seq. governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption." (quotation marks and citation omitted)). The Court thus finds that a misrepresentation about the redemption period may qualify as fraud or irregularity relating to the foreclosure procedure itself.[4]

---

[4] In her claim for violation of the foreclosure redemption statute, Plaintiff focuses on the allegation that Chase's "representative informed Plaintiff that the redemption period expired on January 31, 2013, approximately five months before it was set to expire." First Am. Compl. ¶ 27. However, in her response to the motion to dismiss, Plaintiff also suggests that this claim is based on Chase's "express misrepresentations of an approved short sale." Pl. Resp. at 17; see also id. at 21 ("Defendant Chase Bank, NA lied to the Plaintiff about a short sale approval, her redemption rights in violation of the law, resulting in Plaintiff losing her right to redeem."). To the extent Plaintiff's claim for violation of the redemption statute is based on the short-sale issues, rather than Chase's purported statement about the length of the redemption period, the

Nor is the Court persuaded by Chase's arguments that it cannot be liable for a purported misrepresentation regarding when the redemption period expires because (i) this time period is set by statute and cannot be changed unilaterally by the creditor, and (ii) Plaintiff was given the full six-month period.  See Defs. Br. at 15-16.  Even if the misstatement does not change the redemption period in fact, it undermines the purpose of the foreclosure statute.  The statutes governing a foreclosure by advertisement generally are intended to protect the mortgagor.  See Nat'l Airport Corp. v. Wayne Bank, 252 N.W.2d 519, 521-522 (Mich. Ct. App. 1977); cf. Gaber v. Otsego Cnty. Register of Deeds, No. 211624, 2000 WL 33519539, at *2 (Mich. Ct. App. 2000) (noting that equitable considerations are important in reviewing redemption issues).  Indeed, one clear purpose of the redemption statute is to "enable a debtor-mortgagor an opportunity to acquire the funds to reobtain his property."  Chabut v. Chabut, 239 N.W.2d 401, 405 (Mich. Ct. App. 1976).  But if a mortgagee intentionally misstates the length of the redemption period, a mortgagor may believe his or her time to acquire the necessary funds is shorter or longer than provided by statute.  One can easily imagine how this could cause the mortgagor to lose the opportunity to timely acquire funding — by causing a mortgagor to abandon efforts if he erroneously believed he did not have sufficient time to refinance, or delay efforts beyond the redemption period if he erroneously believed that he had more time to arrange refinancing than was, in fact, the case.  To allow such conduct without any consequence would effectively undermine the statute's objective.

---

Court finds that Plaintiff has not sufficiently alleged this in her complaint.  See Fed. R. Civ. P. 8.  Furthermore, to the extent Plaintiff claims that the January 13, 2013 closing deadline was tied to the January 31, 2013 purported end of the redemption period, Plaintiff fails to explain how this was a violation of Michigan's foreclosure statute.  In other words, Plaintiff fails to explain why Chase could not condition its approval of the short sale on a closing deadline of January 13, 2013, regardless of when it said the applicable redemption period expired.

The Court also rejects Chase's argument that it cannot be liable for a violation of Mich. Comp. Laws § 600.3240 because the correct redemption period was set forth both in the notices of foreclosure and in the May 2013 letter sent to Plaintiff's real estate agent approximately one week before the redemption period expired. Defs. Br. at 14, 16. Michigan's foreclosure statutes describe what information must be contained within the foreclosure notices, including "the length of the redemption period as determined under section 3240." Mich. Comp. Laws §600.3212. However, if a lender subsequently provides false information about the redemption period that is contrary to the notices, then the purpose of providing the information in the notices in the first instance is substantially undermined. Similarly, a mortgagee cannot avoid legal consequences by providing false information at the beginning of the redemption period, and then correct that information with only one week remaining until the period's expiration. To hold otherwise would seriously undermine the statute's goal of providing sufficient time to "enable a debtor-mortgagor an opportunity to acquire the funds to reobtain his property." Chabut, 239 N.W.2d at 405.

Nevertheless, the Court concludes that dismissal of this claim is appropriate based on an irreconcilable conflict between the allegations in the governing complaint and Plaintiff's affidavit attached to the complaint. With respect to Chase's purported statements about the redemption period, Plaintiff alleges in the complaint that, "On November 30, 2012, a Defendant Chase representative told Plaintiff that her redemption period expired January 31, 2013, and the short sale had to close before January 13, 2013." First Am. Compl. ¶ 15. However, Plaintiff claims in her affidavit that, "I had no knowledge that I had a redemption as I did not even know there was a sheriff's sale." Pl. Aff. ¶ 10. Plaintiff fails to explain in her complaint or in her response to the motion to dismiss how she could have "no knowledge that [she] had a

redemption," but yet also be informed that the "redemption period expired January 31, 2013."[5] Nor does the Court see how these statements can be interpreted consistently.

Furthermore, even if these statements were not in conflict, the Court still would conclude that dismissal is appropriate because Plaintiff has not sufficiently alleged prejudice.  Under Michigan law, "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void ab initio."  Kim v. JPMorgan Chase Bank, N.A., 825 N.W.2d 329, 337 (Mich. 2012).  The Michigan Supreme Court further held in Kim that, "to set aside the foreclosure sale, plaintiffs must show that they were prejudiced by defendant's failure to comply with [the foreclosure statutes].  To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute."  Id.

In her First Amended Complaint, Plaintiff's sole allegation of prejudice or harm resulting from the alleged misinformation about the redemption period is that she "moved out of the property in December of 2012, fearing that she would be evicted in one month and lose her opportunity to take advantage of the short sale because of the incorrect information she had received from Defendant Chase."  First. Am. Compl. ¶ 28.  But Plaintiff also states in her affidavit that she moved "to make sure the short sale was completed in a timely manner" and "to make sure [she] was in compliance with the requests of Chase for the closing of the short sale." Pl. Aff. ¶ 7.  Therefore, taken in the light most favorable to Plaintiff, there were two reasons for her decision to leave the home: (i) her concern about eviction in light of the purportedly

---

[5] The May 2013 letter from Chase to Plaintiff's real estate agent does acknowledge that a "Chase representative spoke with [her] on November 30, 2012, and advised that the redemption file approval was good through January 31, 2013."  5/17/13 Correspondence.  As Defendants highlight, however, when read in context, the letter is referring to the short-sale process, not the length of the redemption period.  See id. ("On December 20, 2012, the file was escalated to determine why the approval letter had not been sent." (emphasis added)).

shortened redemption period, and (ii) to ensure the approved short sale was completed.  Plaintiff does not allege that she would <u>not</u> have moved had she known that she had a longer redemption period; to the contrary, Plaintiff's allegations suggest that, even without the purported statement about the redemption period, she still would have vacated the home to assist with the short-sale process.  Therefore, Plaintiff has failed to allege how she was prejudiced by the purported misstatement.

Further, Plaintiff fails to explain how Chase's purported statement about a shortened redemption period hurt her ability to preserve her interest in the home, as opposed to simply accelerating her alleged fear of eviction by a few months.  First Am. Compl. ¶ 28 (noting that Plaintiff moved out of the property in December 2012, "fearing that she would be evicted in one month").  Plaintiff does not explain how her decision to leave the property early affected her ability to explore redemption options.  Instead, Plaintiff argues that she was prejudiced because "she had the means to redeem the property but for Defendant Chases [sic] blatant misrepresentations regarding the short sale."  Pl. Resp. at 17.  In other words, Plaintiff suggests that she could have redeemed the property via other means if Chase had not purportedly continued to suggest that the short-sale would be approved.  But this does not address how Plaintiff would have been in a better position to preserve her interest in the property had the alleged statement about a shortened redemption period — rather than the promises regarding the short sale — not been made.  And it is the November 30, 2012 statement about the redemption period that forms the basis for count one.  <u>See</u> First Am. Compl. ¶ 27.

The Court thus finds that Plaintiff has not sufficiently explained how Chase's alleged statement about a shortened redemption period affected her ability to preserve her interest in the property.

Accordingly, the Court dismisses Plaintiff's claim for violation of Michigan's foreclosure redemption statute.

## B.  Breach of Contract

Plaintiff also raises a claim for breach of contract.  In support of this claim, Plaintiff alleges that Chase "agreed to allow Plaintiff to short-sell the property to avoid a Sheriff's sale," that Plaintiff "listed the property for sale and had several buyers that were ready, willing, and able to purchase the property," and that Chase "agreed to sell the property to this ready, willing, and able . . . purchaser."  First Am. Compl. ¶¶ 43-45.  However, Plaintiff claims that Chase "failed to send the proper document to the title company to close the short sale."  Id. ¶ 46. Plaintiff maintains that she was damaged by this purported breach because she could have "avoided the Sheriff's sale, or at minimum, had an opportunity to redeem her property."  Id. ¶ 47.

### 1.  Parties' Arguments

Defendants highlight that Plaintiff's claim is based on an allegation that she was told that Chase had approved the short sale, but that she was never sent an approval letter and Chase subsequently denied the request.  Defs. Br. at 17.  Defendants argue that the breach-of-contract claim is barred for two reasons: (i) Chase had no legal or statutory duty to approve the short sale, and (ii) the statute of frauds bars Plaintiff's claim because it is premised on an oral agreement. Id. at 18-20.

Plaintiff responds that Defendants had a "duty to comply with the well-established principles of contract law," and that Defendants "breached the short sale contract by failing to perform after informing [her] of the short sale approval and rushing her to move so the new buyer could move in."  Pl. Resp. at 23.  Plaintiff does not expressly respond to Defendants' arguments regarding the statute of frauds in her response brief.  See id.

14

## 2. Analysis

To sustain a cause of action for breach of contract, a party must prove: "(1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." Shore Fin. Servs., Inc. v. Lakeside Title and Escrow Agency, Inc., No. 301143, 2013 WL 2223781, at *3 (Mich. Ct. App. May 21, 2013) (quotation marks and citation omitted). "To prove a breach of contract, the plaintiff must first prove the existence of a contract between the parties." Id. (citation omitted).

Plaintiff alleges a contract was formed between herself and Chase for approval of the short sale when Chase's representative — identified by Plaintiff only as "Glenn" — purportedly approved the short sale on November 26, 2012. First Am. Compl. ¶¶ 10, 45; see also Calhoun Aff. ¶ 6 (Dkt. 14-3). Plaintiff claims this agreement was breached when Chase ultimately refused to finalize the short sale. First Am. Compl. ¶ 46.

The Court rejects Defendants' first argument — that Chase had no statutory or legal obligation to grant a short-sale approval — as meritless. Plaintiff does not dispute that there is no statute or provision in the mortgage document that requires Chase to grant her a short sale. But neither a statutory duty, nor a contractual requirement in the mortgage, forms the basis for Plaintiff's claim. Instead, Plaintiff alleges that Chase agreed to, i.e., approved, her short-sale request, and that Chase breached the agreement when it ultimately refused to take steps necessary to finalize the sale. In other words, Chase's purported obligation arose from its purported independent agreement to approve the short sale, not from any statutory or mortgage-based requirement. And it is this independent contract that Plaintiff alleges Defendant breached. See First. Am. Compl. ¶¶ 45-46 ("Defendant Chase agreed to sell the property to [the] ready,

15

willing, and able . . . purchaser. . . . However, Defendant Chase failed to send the proper

document to the title company to close the short sale.").

However, Defendants also raise an argument based on the statute of frauds.  Defs. Br. at

18-20.  As applicable to this case, Michigan's statute of frauds precludes actions against financial

institutions for certain agreements, unless the agreement is in writing and signed with an

authorized signature by the financial institution:

> An action shall not be brought against a financial institution to
> enforce any of the following promises or commitments of the
> financial institution unless the promise or commitment is in writing
> and signed with an authorized signature by the financial institution:
>
>     \*                   \*                   \*
>
> (b)  A promise or commitment to renew, extend, modify or permit
> a delay in repayment or performance of a loan, extension of credit,
> or other financial accommodation.
>
> (c)  A promise or commitment to waive a provision of a loan,
> extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).   This rule applies to agreements for a short sale, which allow

the mortgagor to sell the property and have the mortgage discharged for an amount less than

owed to the lender, and possible avoidance of any residual deficiency liability.  See Barber v.

Bank of Am., N.A., No. 11-15449, 2013 WL 364011, at *8 (E.D. Mich. Jan. 30, 2013)

(dismissing claims that were based on a purported oral agreement to approve short sale given

statute of frauds); see also Michael T. Madison, et al., 2 Law of Real Estate Financing § 12:10

(Aug. 2014) ("Under the short-sale procedure, the mortgagor secures the agreement of the

mortgagee to release the mortgage upon a bona fide sale to a third party for an agreed upon price

below the mortgage loan balance.  If all goes according to plan, a buyer is located, and the

mortgage loan is satisfied.").  The statute of frauds also applies to any "claim — no matter its

label — against a financial institution to enforce the terms of an oral promise to waive a loan

16

provision." Crown Tech. Park v. D&N Bank, FSB, 619 N.W.2d 66, 72 (Mich. Ct. App. 2000); see also Maltbie v. Bank of Am., No. 12-1002, 2013 WL 6078945, at *6 (W.D. Mich. Nov. 19, 2013).

As Defendants correctly recognize in their reply, Defs. Reply at 1, Plaintiff failed to address Defendants' dispositive argument regarding the statute of frauds in her briefing. Plaintiff has provided no authority or argument suggesting that the statute of frauds would not bar her claim for breach of contract. Moreover, although Plaintiff's counsel asserted at oral argument that the statute of frauds does not bar Plaintiff's misrepresentation claims — an argument discussed infra — counsel failed to articulate any argument as to why it should not bar Plaintiff's claim for breach of contract. Hr'g Tr. at 7-8, attached hereto as Exhibit A. Nor does Plaintiff allege in her pleadings or in her response to Defendants' motion that any signed, written agreement exists between the parties approving the short sale.

The Court thus dismisses Plaintiff's claim for breach of contract. See Gomery v. Continental Cas. Co., No. 13-947, 2014 WL 4209648, at *4 (W.D. Mich. Aug. 25, 2014) (collecting cases from the Sixth Circuit holding that a failure to respond to an argument deems any argument on that issue waived); Notredan, L.L.C. v. Old Republic Exch. Facilitator Co., 531 F. App'x 567, 569 (6th Cir. 2013) (plaintiff's failure to address defendant's argument that plaintiff had failed to state a claim for breach of fiduciary duties "amounts to a forfeiture of the fiduciary-duty claim"); Wargelin v. Bank of Am., N.A., No. 12-15003, 2013 WL 5587817, at *7-8 (E.D. Mich. Oct. 10, 2013) (dismissing claims for which the plaintiff failed to respond to the defendant's dispositive arguments); Pientack v. JPMorgan Chase Bank, N.A., No. 12-12435, 2013 WL 5372880, at *6 (E.D. Mich. Sept. 25, 2013) (same).

Furthermore, even when considering the merits of Defendants' statute-of-frauds argument, Defendants' motion should be granted. Although not raised by Plaintiff, there is disagreement within Michigan courts over what type of writing suffices to satisfy the statute of frauds under Mich. Comp. Laws § 566.132(2). Under the statute of frauds for claims against non-financial institutions, Mich. Comp. Laws § 566.132(1), a note or memorandum evidencing the agreement and its material terms can suffice, even if it is not the actual agreement itself. See Kelly-Stehney & Assocs., Inc. v. MacDonald's Indus. Prods., Inc., 693 N.W.2d 394, 397-398 (Mich. 2005). However, Michigan courts have diverged over whether the same type of note or memorandum can suffice under section 566.132(2) — for claims against financial institutions — or whether that provision more strictly requires that the actual agreement itself have been reduced to writing and signed. Compare Huntington Nat. Bank v. Daniel J. Aronoff Living Trust, -- N.W.2d --, 2014 WL 1267287, at *7-8 (Mich. Ct. App. Mar. 27, 2014) with Barclae v. Zarb, 834 N.W.2d 100, 112 (Mich. Ct. App. 2013).

As mentioned, Plaintiff did not expressly respond to Defendants' argument regarding the statute of frauds, nor has she identified a signed, written agreement between the parties regarding the short sale. However, in other portions of her briefing not addressing the statute of frauds, Plaintiff generally argues that Chase should be bound by the statements in its May 2013 letter. See Pl. Resp. at 8, 22. Even assuming section 566.132(2) generally would permit this type of letter in place of an actual signed, written agreement — a question the Court need not decide — the Court finds that the May 2013 letter is not sufficient to overcome the statute of frauds in this case. One factor courts consider when determining whether a written document satisfies the statute of frauds under the more-lenient standard is if the document "states with reasonable certainty the essential terms of the unperformed promises." See Barclae, 834 N.W.2d at 112-

18

113.  Here, the letter's vague language leaves uncertain precisely what the purported agreement entailed, including the approval's scope, the parties' obligations, and what conditions might have been included.  For example, Plaintiff alleges that she was told that the short sale needed to close by January 13, 2013, see First Am. Compl. ¶ 15, but that condition is not set forth in the letter. Therefore, drawing all inferences in favor of Plaintiff, the Court finds that the May 2013 letter does not satisfy the statute of frauds, even if this type of document could otherwise suffice.

### C.  Fraudulent and Innocent Misrepresentation

Plaintiff also raises claims against Defendant Chase for fraudulent and innocent misrepresentation.  The factual allegations underlying these two claims are the same:  Chase's agents made false representations to Plaintiff about (1) the end of the redemption period and (2) the approval of her short-sale request.  First Am. Compl. ¶¶ 29-41.  Under both causes of action, Plaintiff alleges that she relied upon these misrepresentations because she "and her family moved out of the property five months before the redemption period was to expire."  Id. ¶¶ 33, 40. Plaintiff claims she suffered damages from the misrepresentations because she "could have remained in the property five additional months and she could have sold the property during the redemption period."  Id. ¶¶ 36, 41.[6]

### 1.  Parties' Arguments

As with the claim for violation of the foreclosure redemption statute, Defendants first argue that Plaintiff's misrepresentation claims cannot stand because her allegations conflict with

---

[6] In her response to the motion to dismiss, Plaintiff further claims that she was harmed by Defendants' actions because, if the misrepresentations had not been made, Plaintiff "would have her home via the statutory redemption process."  Pl. Resp. at 17.  But if Plaintiff had been granted the short sale as allegedly promised, the home would have been sold to a third-party purchaser for less than the amount of the debt.  See Michael T. Madison, et al., 2 Law of Real Estate Financing § 12:10 (Aug. 2014); see also Defs. Br. at 3.  Therefore, if the short sale had been completed, as Plaintiff says should have occurred, Plaintiff would not "have her home."

her affidavit attached to the First Amended Complaint.  Defs. Br. at 5-8.  Defendants highlight that Plaintiff's allegations regarding the reason for her move are inconsistent — i.e., the purportedly shortened redemption period versus the purportedly approved short sale — and thus her fraudulent and innocent misrepresentation claims should be dismissed.

Defendants next argue that, with respect to the short sale, Plaintiff's misrepresentation claims are simply her claim for breach of contract repackaged.  Therefore, Defendants assert that the Court also should dismiss her misrepresentation claims under the statute of frauds.  Id. at 17-20.  Defendants maintain that "any claim against a financial institution based upon an alleged promise to make a financial accommodation is precluded by the statute of frauds, no matter what plaintiff elects to title his or her claim." Id. at 19.

Plaintiff responds by arguing that her complaint and her affidavit are not inconsistent.  Pl. Resp. at 6-8.  Plaintiff also argues that her misrepresentation claims are valid because she "was induced into believing that she was approved for a short sale and needed to move immediately. Plaintiff was further told by Defendant Chase representatives that her redemption period was over in January 2013, and she needed to move before the expiration of the redemption." Id. at 22.

### 2.  Analysis

To sustain a cause of action for fraudulent misrepresentation, Plaintiff must prove the following elements: (i) Chase made a material misrepresentation; (ii) that was false; (iii) that, when made, Chase knew was false, or it was made recklessly, without any knowledge of its truth and as a positive assertion; (iv) that Chase made the misrepresentation with the intention that it should be acted upon by Plaintiff; (v) that Plaintiff did act upon it; and (vi) that Plaintiff suffered injury as a result.  See Hi-Way Motor Co. v. Int'l Harvester Co., 247 N.W.2d 813, 816 (Mich.

1976).  Furthermore, Plaintiff's alleged reliance on the misrepresentation must be reasonable.

See Novak v. Nationwide Mut. Ins. Co., 599 N.W.2d 546, 554 (Mich. Ct. App. 1999).

A claim for innocent misrepresentation differs from a claim for fraudulent

misrepresentation, eliminating some of the above requirements, and adding others:

> On the one hand, the innocent misrepresentation rule differs in eliminating scienter and proof of the intention that the misrepresentation be acted upon.  However, on the other hand, the innocent misrepresentation rule adds the requirements that the misrepresentation be made in connection with making a contract and the injury suffered by the victim must inure to the benefit of the misrepresenter. . . . [I]t is unnecessary to prove separately that the representer intended that the victim rely on the misrepresentation, because the representation must be made in a transaction between them, where the misrepresenter should realize that the misrepresentation would be relied upon.

U.S. Fidelity & Guaranty Co. v. Black, 313 N.W.2d 77, 85 (Mich. 1981).  Claims for both

fraudulent and innocent misrepresentation are governed by Federal Rule of Civil Procedure 9(b),

Smith v. Bank of Am. Corp., 485 F. App'x 749, 752 (6th Cir. 2012), which requires a party to

"state with particularity the circumstances constituting fraud or mistake."  The Sixth Circuit has

interpreted this rule as requiring the complaint to "(1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."  Frank v. Dana Corp., 547 F.3d 564,

570 (6th Cir. 2008) (quotation marks and citation omitted).

Plaintiff's First Amended Complaint identifies two statements that form the basis for her

fraudulent and innocent misrepresentation claims.   First, Plaintiff alleges that Chase's

representative wrongfully informed her that the redemption period for a sheriff's sale that

occurred on November 27, 2012 expired on January 31, 2013.  See First Am. Compl. ¶ 30.

21

Second, Plaintiff claims that Chase's representatives approved her short-sale request in November 2012, and stated that the paperwork had been sent to Freddie Mac.  Id. ¶ 31.

With respect to Plaintiff's claims surrounding the statement concerning the shortened redemption period, the Court concludes that these claims are subject to dismissal because they are contradicted by the affidavit attached to the complaint, as described above.  Moreover, even if not directly contradictory, the Court would dismiss these claims because Plaintiff has not sufficiently alleged how she reasonably relied on the alleged statement to her detriment.  See Zaremba Equipment, Inc. v. Harco Nat'l Ins. Co., 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) (reliance must be reasonable for both fraudulent misrepresentation and innocent misrepresentation claims).  While Plaintiff maintains that she was told her redemption period expired at the end of January, see First. Am. Compl. ¶ 30, and that she could have redeemed the property by obtaining a new mortgage loan, id. ¶ 33 (citing an August 2013 pre-approval certificate, exhibit 4 to the First Am. Compl. (Dkt. 14-5)), she does not allege that she would have redeemed the property via a new mortgage loan if she had not been told the incorrect expiration date.  In other words, Plaintiff does not allege that she was actually deterred from seeking new financing because of the purported statement about a shortened redemption period.  Furthermore, there is no indication that Plaintiff made any effort to redeem via a new mortgage loan after receiving the May 2013 letter, but before the redemption period actually expired.  For example, Plaintiff does not allege that she asked Defendants to extend the redemption period, or that she even sought to obtain financing before this case was filed in June 2013.

To the contrary, as described above, Plaintiff's allegations regarding Chase's interference with her redemption rights focus primarily on Chase's purported statements about the short-sale approval and how those statements convinced her not to seek other redemption options; they do

not focus on the purported statement about a shortened redemption period.  See Pl. Resp. at 10-11 ("Plaintiff had a right to redeem her property, and could have redeemed her property if Defendant Chase had not lied, and continued to perpetuate the lied [sic] through letters from January 2013, through April 2013, regarding the short sale, while never informing the Plaintiff of the lie and her redemption period was running."); 17 (arguing that Plaintiff "had the means to redeem the property but for Defendant Chases [sic] blatant misrepresentations regarding the short sale"); see also Hr'g Tr. at 3-7 (arguing that Plaintiff relied on the short-sale approval, thereby reducing the time she could have sought other redemption options).  Therefore, Plaintiff has not sufficiently alleged how she reasonably relied on the purported statement about the shortened redemption period — as opposed to the short-sale approval — with respect to her post-sheriff's sale redemption rights.

Plaintiff does claim that she relied on the statement about the redemption period to her detriment by moving out of the home early, but her affidavit and the allegations in her complaint undermine such a claim.  See First Am. Compl. ¶¶ 28, 36.  These documents reveal that Plaintiff actually moved in December 2012 either (i) to assist the short sale, or, (ii) at a minimum, both because of the shortened redemption period and in furtherance of the short sale.  See id. ¶ 28; Pl. Aff. ¶ 7 ("The buyer also wanted to move into the property.  I wanted to make sure the short sale was completed in a timely manner, and I would not have to endure a foreclosure on my credit report.  I moved myself and children out on December 23, 2012, to make sure I was in compliance with the requests of Chase for the closing of the short sale."); Calhoun Aff. ¶ 9 (Dkt. 14-3) ("Based on this information [about the short sale] and the buyer's need for occupancy as soon as possible, Ms. Tina James relocated in December of 2012."); see also Hr'g Tr. at 7 (stating that Plaintiff "moved her whole family out on the basis of the short sale approval").

23

Therefore, Plaintiff has not sufficiently pled reasonable reliance because, even if the statement regarding the redemption period had not been made, the First Amended Complaint and exhibits attached thereto suggest she still would have moved in December 2012 to complete the short sale.

Regarding Plaintiff's claims for fraudulent and innocent misrepresentation arising out of the purported statements approving the short sale, the Court concludes that these claims are subject to dismissal as well.  Like Plaintiff's claim for breach of contract, Defendants argue that Plaintiff's misrepresentation claims are barred by the statute of frauds.  Plaintiff did not directly respond to this argument in her briefing on the motion to dismiss.  However, at oral argument Plaintiff's counsel asserted that, "[e]ven if [the statute of frauds] precluded a claim, that would only go to the breach of contract, not the other claims of misrepresentation, innocent misrepresentation, fraudulent misrepresentation or the other claims set forth."  Hr'g Tr. at 7-8.

As discussed earlier, Mich. Comp. Laws § 566.132(2) precludes any action against a financial institution regarding certain agreements and promises, unless in writing and signed with an authorized signature by the financial institution.  In Crown Technology Park, 619 N.W.2d at 72, the Michigan Court of Appeals analyzed the scope of this statute, noting that it bars "an action," and that, "[b]y not specifying what sort of 'action[,]' . . . [the statute] preclude[s] all actions for the enumerated promises and commitments," not just actions for breach of contract. Id. (emphasis in original).  The court ultimately concluded that section 566.132(2) "plainly states that a party is precluded from bringing a claim — no matter its label — against a financial institution to enforce the terms of an oral promise to waive a loan provision."  Id.

Numerous courts subsequently analyzing this issue have concluded that Mich. Comp. Laws § 566.132(2) bars actions for fraudulent and innocent misrepresentation based on the same

types of promises alleged here.  See, e.g., Republic Bank v. Britton Estates, L.L.C., No. 258616, 2006 WL 445916, at *3-4 (Mich. Ct. App. Feb. 23, 2006) (statute of frauds barred misrepresentation claims based on alleged promises); Whitfield v. Bank of Am., No. 12-14585, 2013 WL 1506588, at *4 (E.D. Mich. Apr. 12, 2013) (dismissing fraud claim, among others, based on statute of frauds); Altomonte v. Wells Fargo Bank, N.A., No. 11-12878, 2011 WL 4695824, at *3 (E.D. Mich. Oct. 5, 2011) (same); Maltbie, 2013 WL 6078945, at *6 (dismissing "misrepresentation claims — all of which are based on BOA's alleged promise to modify [the plaintiffs'] loan," because these claims "fall squarely within the scope of the statute of frauds"). Here, Plaintiff's misrepresentation claims based on the short-sale approval are, in essence, actions to enforce an alleged promise or commitment to modify or waive the terms of the mortgage loan.  See Mich. Comp. Laws § 566.132(2).  Plaintiff offers no explanation for why the statute of frauds would not bar these misrepresentation claims; indeed, she failed to respond to the statute-of-frauds argument at all in her briefing.[7]  Therefore, the Court rejects Plaintiff's conclusory assertion — raised at oral argument — that the statute of frauds could not bar her misrepresentation claims.

Accordingly, the Court dismisses Plaintiff's claims for fraudulent and innocent misrepresentation.

## D.  Quiet Title

Plaintiff's last claim, for quiet title, is asserted solely against Defendant Freddie Mac. Plaintiff claims that both she and Freddie Mac assert an ownership interest in the property, but

---

[7] As described earlier, Plaintiff did assert in her briefing that "Defendant Chase has admitted there were misrepresentations in the short sale transaction and even apologized, but has not made any effort to make Plaintiff whole."  See Pl. Resp. at 22 (referring to the May 2013 letter). However, Plaintiff does not expressly argue that the May 2013 letter satisfies the statute of frauds, nor does the Court find that it does, as explained supra.

that her interest is superior.  First Am. Compl. ¶¶ 50-51.  Plaintiff asserts that she is "seeking a determination from this court as to title, interest rights and obligations of all parties claiming ownership to this property."  Id. ¶ 52.

### 1.  Parties' Arguments

Defendants argue that this equitable claim should be dismissed because Plaintiff has unclean hands.  Defs. Br. at 8-9.  The basis for Defendants' argument is that Plaintiff defaulted on her mortgage loan and failed to pay it back, thereby precluding her from seeking equitable relief.  Id.  Defendants also argue that Plaintiff has not made a prima facie showing entitling her to relief.  Id. at 20-22.

Plaintiff responds that it was Defendant Chase that acted with unclean hands by lying, and continuing to lie, regarding the short sale.  Pl. Resp. at 10-11.  Plaintiff also argues that she "was prejudiced by Defendant's illegal foreclosure," and, "as such Plaintiff is entitled to have title quieted back into her name, and to have the rights in the property properly determined based upon the conduct of the Defendants in the matter."  Id. at 24.

### 2.  Analysis

Under Michigan law, the plaintiff has the initial burden of proof in an action seeking quiet title relief; if the plaintiff meets his or her burden, the burden then shifts to the defendant to prove that it has superior title in the property at issue.  Beulah Hoagland Appleton Qualified Personal Residence Trust v. Emmet Cnty. Road Comm'n, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999).  A complaint alleging quiet title must set forth (a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim.  MCR 3.411(B)(2).

The Court first rejects Defendants' argument that Plaintiff cannot support a claim for quiet title — or any other claim — due to her failure to pay the mortgage loan.  Under Defendants' interpretation, a mortgagor who defaults on his or her mortgage obligations cannot seek to undo a foreclosure sale that was conducted unlawfully — even if there is significant fraud or irregularity in the foreclosure proceeding and prejudice resulting from the sale — so long as it is undisputed that the mortgagor defaulted.  This would effectively eliminate any private enforcement of Michigan's statutory foreclosure scheme, and would make the weight of authority interpreting that scheme — including cases such as Kim — essentially meaningless.[8]

Nor is Defendants' reliance on Yuille v. Am. Home Mortg. Servs., Inc., 483 F. App'x 132 (6th Cir. 2012), persuasive.  In that case, after defaulting on his loan, the plaintiff sought a judicial determination that the mortgage was unenforceable and that he had no further contractual obligations.  Id. at 134-135.  The Sixth Circuit found that the district court "properly applied the unclean-hands doctrine, since [the plaintiff] received $3.6 million in exchange for the note and mortgage, failed to pay that debt as he agreed, and then sought judicial assistance in avoiding his contractual obligations."  Id. at 135.

Here, Plaintiff does not appear to seek to avoid her contractual obligation to repay the debt.  Rather, in her claims for fraudulent and innocent misrepresentation, Plaintiff asks the Court to grant her "an extended five months redemption period together with such other damages, court cost[s], and fees, as this Court deems appropriate."  First Am. Compl. ¶ 41.  In other words, Plaintiff does not deny her contractual obligations to make repayment, nor does she request that the Court extinguish the mortgage altogether without any payment to Defendants;

---

[8] Defendants also argue that Plaintiff's request for an equitable extension of the redemption period should be denied on this same basis.  Defs. Br. at 9.  The Court rejects this argument for the same reason.

rather, she asks that the Court grant her additional time to redeem in light of the purported misrepresentations about the approved short sale. The Court, therefore, finds <u>Yuille</u> inapplicable. <u>Cf.</u> <u>Chrzanowski v. U.S. Bank, Nat'l Ass'n</u>, No. 14-11365, 2014 WL 2895442, at *2 (E.D. Mich. June 26, 2014) (applying <u>Yuille</u> where the plaintiffs "request[ed] that the court rescind the Mortgage and declare it invalid," but had "not repaid or offered to repay the Loan").

Nevertheless, the Court concludes that dismissal of Plaintiff's claim for quiet title is required. This claim of superior title is based on Plaintiff's claims arising out of the alleged statements concerning the short-sale approval and the redemption period's expiration. <u>See</u> First Am. Compl. ¶ 48 (incorporating all prior allegations); Pl. Resp. at 24 ("Plaintiff is entitled to have title quieted back into her name, and to have the rights in the property properly determined based upon the conduct of the Defendants in the matter as outlined" in her response brief.). However, the Court dismissed those claims for the reasons described above. Plaintiff does not allege any other fraud, irregularity, or defect in the foreclosure proceedings — or any other basis for claiming superior title. Therefore, Plaintiff has not pleaded a plausible claim of quiet title. The Court thus dismisses this claim. <u>See</u> <u>Vuljaj v. Chase Home Fin.</u>, No. 12-13932, 2013 WL 5450278, at *4 (E.D. Mich. Sept. 30, 2013) ("As the Plaintiffs cannot establish a defect in the foreclosure proceeding, their quiet title claim must also fail.").[9]

## V. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion to dismiss (Dkt. 15) and dismisses Plaintiff's First Amended Complaint (Dkt. 14) with prejudice.[10]

---

[9] Because the Court dismisses this claim, it need not address Defendants' alternative argument that quiet title is a remedy, and not a cause of action. <u>See</u> Defs. Reply at 6.

[10] In her response, Plaintiff also offhandedly requests leave to amend "to include Defendants [sic] clear violation of 12 CFR 1024.41 and 12 USC 2605(f)." Pl. Resp. at 25. The Court denies this request as improper. <u>See</u> <u>Mulholland v. Pharmacia & Upjohn, Inc.</u>, No. 99-98, 2001 WL

SO ORDERED.

Dated: September 24, 2014
    Detroit, Michigan

s:\Mark A. Goldsmith
_____
MARK A. GOLDSMITH
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2014.

s/Johnetta M. Curry-Williams
_____
JOHNETTA M. CURRY-WILLIAMS
CASE MANAGER

---

311241, at *9 (W.D. Mich. Feb. 15, 2001) (rejecting claim raised in response brief because "[f]iling a motion is the proper method to request leave to amend a complaint"); see also Fed. R. Civ. P. 7(b)(1).

# EXHIBIT A

```
1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MICHIGAN
2                     SOUTHERN DIVISION

3

   TINA JAMES,
4
        Plaintiff,
5

6  -v-                                 Case No. 13-cv-13029

7

   FEDERAL HOME LOAN
8  MORTGAGE CORPORATION,
   And CHASE BANK,
9
        Defendants,
10 _____/

11

12           EXCERPTS OF DEFENDANTS' MOTION TO DISMISS

              BEFORE HONORABLE MARK A. GOLDSMITH
13
          Flint, Michigan, Thursday, April 24th, 2014.
14

15

16 APPEARANCES:

17 FOR THE PLAINTIFF:      VANESSA G. FLUKER  (P64870)
                           2921 E. Jefferson Avenue
18                         Suite 200
                           Detroit, MI 48207
19

20 FOR THE DEFENDANT:      LAURA C. BAUCUS  (P56932)
                           400 Renaissance Center
21                         Detroit, MI 48243

22

23

   David B. Yarbrough, CSR, RPR, FCRR
24 Official Court Reporter
   (313) 410-7000
25
```

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

NONE

1          Flint, Michigan.

2          Thursday, April 24th, 2014.

3          At or about 1:49 p.m.

4                          *     *     *

5          THE COURT:  Well, I'm a little bit confused about

6     exactly what is your theory of misrepresentation here.

7          MS. FLUKER:  The theory of misrepresentation is that

8     they represented and e-mails and things of that nature are

9     attached to the Complaint cited to in the docket, they said in

10    their e-mails that the short sale was approved, that it needed

11    to be consummated by January of 2013.  Therefore, the borrower

12    to make sure that could be done left the home in December of

13    2012.

14         THE COURT:  All right.  So the misrepresentation only

15    has to do with the issue of short sale, not with redemption?

16         MS. FLUKER:  With both because after the short sale

17    was said it was approved, you don't have to worry about a

18    redemption.  She's under the impression the short sale was

19    done, her credit's going to be okay, this situation has been

20    taken care of and if in fact she had known that all this time a

21    redemption period was ticking, she would have had the

22    opportunity to redeem her home and the --

23         THE COURT:  But I thought she says in her affidavit

24    that she thought this property had to be or the transaction had

25    to be completed by January because of the redemption period

1    being over in January.

2          MS. FLUKER:  Right, exactly and she's thinking the

3    deal is done so there's no deal left, there's no redemption

4    left, there's no anything left because everything's over and

5    completed only to find out that in fact there was no short sale

6    and when she thinks everything's completed, her redemption is

7    steadily ticking away and I think the position that when she

8    got the letter in May, well, she had a month to redeem her

9    property somehow justifies this, I don't think that that is

10   acceptable when by statute you're entitled to six months and I

11   think it's even more egregious because this woman would have

12   had the ability to redeem that property.

13         THE COURT:  Well, let's break these two ideas apart

14   though.  One has to do with redemption; one has to do with

15   short sale.  With respect to redemption, what exactly is the

16   reliance that has to do with redemption?

17         MS. FLUKER:  The reliance isn't, I know you're trying

18   to break them apart, but in the short sale scenario, they kind

19   of go together because when an individual does a short sale,

20   once the short sale is consummated, the whole deal is done,

21   there is no redemption because the property has been sold, done

22   on a short sale and that precludes the reporting of the

23   foreclosure on the credit report and the adverse credit

24   reporting and it also allows the borrower the opportunity to

25   waive the underlying deficiency which is the benefit of the

1    short sale which is a part of the HAMP program, the federal

2    program under the HAFA, and that is why it's kind of hard to

3    separate them.  Obviously if you know there's no short sale,

4    well you know that your home's ticking through the foreclosure

5    process and you have a redemption, but if you believe there's a

6    completed or a soon to be completed short sale, then you're

7    under the impression there's no redemption anyway because as

8    counsel stated, the short sale is done pursuant to the HAMP

9    guidelines and contract.  Just by way of brief background,

10   short sale component of HAMP just like the borrower's signed on

11   board to do the modifications and made an agreement with the

12   government to do that, one of the components of that program is

13   the short sale component.  Therefore when they do the short

14   sale, what you're actually doing is saying hey, instead of

15   moving forward with this regular foreclosure, we're going to

16   permit this short sale where your real estate agent goes out

17   and finds a purchaser for the property in an amount that's

18   agreed upon by both the bank and whoever the purchaser is.

19   That purchase occurs.  There's no redemption because the

20   property is now owned by someone else and the benefit that the

21   borrower receives is that they get to sell the property for

22   less than the full mortgage value, the deficiency is waived and

23   they don't have a foreclosure on their credit and that's one of

24   the steps in the HAMP process if modification is not an option.

25   So it's kind of hard to say well what about the short sale and

1   the redemption because it there had not been a short sale

2   scenario, we would not have the redemption problem and the

3   misrepresentation --

4          THE COURT:  Well, that's what I'm trying to find out.

5   What's the redemption problem?

6          MS. FLUKER:  The redemption problem is because once

7   they misrepresented and told her the short sale was approved,

8   everything stops at that point.  The borrow's under the

9   impression --

10          THE COURT:  What is it that's stopped?

11          MS. FLUKER:  Foreclosure proceedings, everything.

12   Ones there's a short sale, no foreclosure occurs after that

13   because the new purchaser on the short sale now owns the home.

14   The bank takes the money for that and there is no redemption.

15          THE COURT:  Right, I understand your point that your

16   client thought that the bank had agreed to a short sale?  Is

17   that right?

18          MS. FLUKER:  That is correct and --

19          THE COURT:  Okay.  So your client thought there would

20   be no need to worry about redemption because there wasn't going

21   to be a foreclosure sale, right?

22          MS. FLUKER:  Right, the foreclosure would be cut off,

23   there would be no redemption and the new purchaser would take

24   over and that's --

25          THE COURT:  Okay.  So what kind of harm ended up

1  being inflicted on your client when it turned out there wasn't

2  going to be a short sale?  I'm trying to understand what kind

3  of harm was there that your client thought for some period of

4  time that she didn't have to worry about a redemption and then

5  suddenly she finds out that she has to worry about a

6  redemption?  What's the harm at that point?  I'm trying to

7  understand it.

8          MS. FLUKER:  The harm is because it frustrated the

9  buyer's ability to, one, redeem that property, not to mention

10  she moved her whole family out on the basis of the short sale

11  approval and in the May 17th letter which I think is very

12  telling, that is why Chase is apologizing and basically

13  threatening to take discipline with the employee that, you

14  know, engaged in the communications because in fact they were

15  told there was an approval.

16          THE COURT:  Are you saying your client could have

17  redeemed the property?

18          MS. FLUKER:  Yes, and still can redeem the property.

19                        *      *      *

20          THE COURT:  Okay.  Go ahead.

21          MS. FLUKER:  I just want to hit a couple other

22  points, your Honor, from the reply brief that I think are

23  significant.

24          THE COURT:  All right.

25          MS. FLUKER:  First and foremost, counsel represented

1    that basically the Statute of Frauds and, umm, precluded the

2    plaintiff's claims and that is not true.  Even if it precluded

3    a claim, that would only go to the breach of contract, not the

4    other claims of misrepresentation, innocent misrepresentation,

5    fraudulent misrepresentation or the other claims set forth.

6           Additionally in their reply brief, they relied on the

7    unclean hand doctrine in both and they rely on the

8    Yuille v. American Home Mortgage case that's their Exhibit G1

9    to docket 15.  In that particular case, I think it's important

10   to make the distinction.  In that case, the Yuille case,

11   Mr. Yuille brought claims saying that his warranty deed give

12   him full title to the property because MERS was the foreclosing

13   entity which is nothing like this case.  In this case, our

14   quiet title is based upon the right to have a determination of

15   the interest in the property pursuant to MCL 600.2932.  And

16   specifically, this case is cited in my brief so I won't go into

17   it in detail, but the Adams v. Adams case which relies on the

18   Statute, it talks about the quiet title action being the

19   fundamental essence of an action to determine interest in the

20   land and in this case we're talking about a frustration of

21   redemption.  During the redemption period, the borrower in the

22   case retains equitable title and the foreclosing entity retains

23   legal title.  She was divested of that equitable title as she

24   was divested and frustrated with the redemption rights so I

25   just wanted to make that aspect clear.

1                    One final point I would like to bring out is the

2        aspect of the irregularity in establishing prejudice.  Now the

3        defendants rely on the Conclin case and Kim and that is fine,

4        those are controlling cases in the circuit and in the state,

5        but the issue is is that if you look at those cases, for

6        instance in Conclin it doesn't say that a borrower can never

7        challenge a foreclosure.  It says that you must demonstrate

8        fraud or irregularity is what we have argued here.  Just like

9        in Kim, Kim goes through the same standard and in their

10       analysis, the only analysis that changed in Kim is that they

11       changed the void ab initio analysis in Davenport to a voidable

12       analysis based upon the borrower's showing of prejudice and

13       they define prejudice if the borrower would have been in a

14       better position but for the irregularity of fraud in the

15       transaction.  In this particular instance, it's quite evident

16       that the borrower would have been in a better position if they

17       had not frustrated her redemption rights and as I was going

18       through my brief, I do see that the proof of funding is

19       attached in the docket of the Complaint as Exhibit 4.  She

20       would have the ability to redeem that property but for the

21       misrepresentations and the inability to exercise her redemption

22       rights.

23                    So the bottom line is is that they're saying that

24       this doesn't go to the foreclosure process, it does go to the

25       foreclosure process.  In fact, if you look at MCL 600.3204

1    (1)(d) -- I mean (d)(1), it specifically talks about, the very

2    first thing it talks about there has to be a validity fault.

3    You have to have an ownership interest in the loan.  It goes

4    through a whole list of things that must be done and in essence

5    by them failing to give her accurate information and literally

6    misrepresenting information, they did not even have the ability

7    to comply with the mandatory statute for foreclosure and we

8    won't even start discussing the whole aspect of, you know, the

9    violations under HAMP and things of that nature which have been

10   recently addressed in a recent Sixth Circuit case, Mick v.

11   Federal Home Loan Mortgage Corporation; i.e., Freddie Mac where

12   the Sixth Circuit actually states in that particular ruling

13   that a borrower can raise HAMP allegations offensively to

14   substantiate a state claim and in this particular instance we

15   have a situation where there was a violation by improperly

16   executing the short sale aspect of HAMP, the HAFA, which

17   provides for the short sale; thus, you know, catalyzing her to

18   is lose her redemption period through misrepresentation which

19   is not something that's just being arbitrarily asserted, but is

20   actually supported and substantiated to a letter from Chase and

21   to Freddie Mac and to the real estate agent that there were

22   misrepresentations and errors made in this transaction.  I

23   think at this early stage in the proceedings, this is a

24   12(b)(6), there are definitely factual issues that can be

25   developed and definitely claims that the plaintiff could

1   prevail on, I think it is premature to grant their motion to

2   dismiss in light of the evidence that's been submitted along

3   with the plaintiff's Complaint and the law as applied in

4   Michigan.  So I would request that the motion for dismissal be

5   denied.  You have any other questions for me, your Honor?

6          THE COURT:  No, thank you.

7          (Excerpt concluded).

8                         *      *      *

```
1                      C E R T I F I C A T E

2

3

4

5

6

7             I, David B. Yarbrough, Official Court

8    Reporter, do hereby certify that the foregoing pages

9    comprise a true and accurate Excerpt transcript of the

10   proceedings taken by me in this matter on Thursday,

11   April 24th, 2014.

12

13

14

15

16   9/23/2014                /s/ David B. Yarbrough

17   Date                     David B. Yarbrough, CSR, FCRR
                              231 W. Lafayette Street
18                            Detroit, MI  48226

19

20

21

22

23

24

25
```